**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **ROBERT TAYLOR WATTS,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**ANDREW SAUL,** )<br>**Commissioner of the** )<br>**Social Security Administration,** )<br>)<br>Defendant. ) | Case No. 19-cv-596-STE |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-24). The

Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from September 20, 2016, his alleged onset date, through March 31, 2017, the date he was last insured. (TR. 14). At step two, the ALJ determined that Mr. Watts had the following severe impairments: obsessive-compulsive disorder and bipolar disorder. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 15).

At step four, the ALJ concluded that Mr. Watts had no past relevant work, but retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Plaintiff] can understand, remember, and carry out simple and some complex tasks. Public contact should not be a part of the job duties. [Plaintiff] can tolerate superficial contact with coworkers and supervisors.

(TR. 16, 22).

The ALJ then proceeded to make findings at step five. The ALJ consulted with a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. Given the limitations presented by the ALJ, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 22-23). Relying upon

2

the testimony of the VE, the ALJ concluded that Mr. Watts was not disabled based on his ability to perform the identified jobs. (TR. 23).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### IV. ISSUES PRESENTED

### V. ANALYSIS

#### A. The ALJ Did Not Pick and Choose Through the Evidence

Mr. Watts contends the ALJ engaged in impermissible picking and choosing by utilizing medical evidence supporting his decision while "ignoring or minimizing" portions favorable to him. (ECF No. 15:6). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*

3

*v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). Nevertheless, an ALJ must "discuss[] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." *Id.* at 1010.

### 1. Dr. Crawford

Mr. Watts contends the ALJ did not address evidence from a March 6, 2017 record in which Dr. Benjamin Crawford, D.O., noted Plaintiff underwent electroconvulsive therapy (ECT), had high anxiety, feared his house and did not want to return, and had suicidal ideations. ECF No. 15:7 (citing TR. 405). But the ALJ specifically referenced this record:

> A note from Psychiatric Associates of Tulsa dated March 6, 2017, was submitted. The notes [sic] shows Dr. Aaron Pierce called and stated [Plaintiff] had high anxiety, was afraid of his house, and did not want to go back in. His mood got low during ECT treatment and he was having suicidal ideation related to problems with his girlfriend. Dr. Pierce wondered if Zoloft caused an increase in his anxiety. Dr. Pierce asked to lower [Plaintiff's] Valium dose.

TR. 19 (citing TR. 405). Thus, Plaintiff's assertion of error is without merit.[2]

### 2. Evidence from Before and After the Alleged Period of Disability

Mr. Watts generally argues the ALJ improperly disregarded evidence from before the onset date (September 20, 2016) and after his date last insured (March 31, 2017). (ECF No. 15:6-7). The ALJ stated that "[t]here is medical evidence not pertinent to the

---

[2] Plaintiff also asserts that Dr. Crawford's record "was corroborated at Stillwater Family Care on April 3, 2017," but that "the ALJ's analysis does not include the information." ECF No. 15:7 (citing Tr. 509-512). Because the ALJ addressed Dr. Crawford's reference to ECT, Plaintiff's argument is moot.

period of disability in question" multiple times throughout the decision in reference to medical evidence from outside the alleged period of disability. (TR. 17-20). Plaintiff contends such records "must be considered to fully and fairly assess" whether he was disabled during the relevant time period. (ECF No. 15:6). But, with two exceptions noted below, Mr. Watts does not indicate specific portions of the evidence the ALJ should have discussed—i.e., uncontroverted evidence he chose not to rely on and the probative evidence he rejected—or how the evidence would affect the ALJ's decision. As a result, the Court will not further consider these arguments except for the specific examples addressed below. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

### a. Dr. Morris

Plaintiff argues that records from Dr. Jennifer Morris, M.D., "show continued problems with [Plaintiff's] mental health, leading to the prescription of Lithium in 2018." ECF No. 15:10 (citing TR. 531-543). The ALJ stated:

> Office treatment notes from Jennifer Morris, M.D., from June 25, 2018 to August 29, 2018, were submitted after the hearing and considered in this decision. However, it is noted [Plaintiff's] date of last insured is March 31, 2017[,] and these records are after his date last insured. There [sic] is medical evidence not pertinent to the period of disability in question.

(TR. 20). "[E]vidence documenting a claimant's condition after her date last insured may be considered if it relates to the insured period." *White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017) (citing *Blea v. Barnhart*, 466 F.3d 903, 913 (10th Cir. 2006); *Hardman v. Barnhart*, 362 F.3d 676, 678, 681 (10th Cir. 2004)). But here, Mr. Watts points to no

evidence or opinions indicating his condition in June through August of 2018 related to his condition before March 31, 2017. See *Flaherty v. Astrue*, 515 F.3d 1067, 1072 (10th Cir. 2007) ("[The claimant] also claims the ALJ should have considered Dr. Setty's April 2003 records and migraine diagnosis. She points to no opinion, however, relating his April 2003 condition to the relevant period—March 5, 2002 to December 31, 2002."). To the contrary, at his first appointment with Dr. Morris, Plaintiff advised his symptoms—including depressed mood, loss of interest, insomnia, and fatigue—were worsening. (TR. 540). As such, the ALJ did not err in his discussion of Dr. Morris's records.

### b. Dr. Bianco

Dr. Faust Bianco, Ph.D. wrote a letter to Dr. Crawford on June 28, 2016, noting that he believed Mr. Watts suffered from "Bipolar II, rapid cycling primarily depressive mood, which is severe, and he is generally of moderately flat affect." (TR. 314). He also indicated that Plaintiff had some difficulty with psychiatric care in the past and had negative reactions to antidepressant medications, which "may have been antidepressant medications induced manic behaviors." (TR. 314). Dr. Bianco also stated that "it appears his general psychological state is one of dysthymia, with what [Plaintiff] describes as two or three days of major depression per week interspersed among the general state of dysthymia, and as stated, eight or nine daylong episodes of manic-like behavior that rapidly cycle[s] into depression." (TR. 315). Then, Dr. Bianco noted that Plaintiff "has not been able to hold down a job for more than a few months during the time of his working age." (TR. 315).

The ALJ addressed Dr. Bianco's letter twice in the decision. First, he stated:

> Progress notes from Comprehensive Community Rehab Services from June 28, 2016, were considered in this decision. However, it is noted [Plaintiff's] alleged onset date is September 20, 2016 and these records are prior to his alleged onset date. There is medical evidence not pertinent to the period of disability in question.

(TR. 18) (internal citation omitted). Later in the decision, the ALJ weighed Dr. Bianco's opinion as follows:

> Faust Bianco, Ph.D.'s letter . . . is given no weight. Dr. Bianco's letter says [Plaintiff] cannot hold down a job. This is not a medical opinion, it is an issue reserved to the Commissioner of Social security. In addition, it is not consistent with the evidence discussed at length above with his psychological examinations at [TR. 366-391] and his activities at [TR. 419-432].

(TR. 21-22).[3] Mr. Watts argues the ALJ did not address Dr. Bianco's "description of [Plaintiff's] functioning and his diagnosis of Bipolar II, rapid cycling primarily depressive mood, severe, and moderately flat affect" as well as his "description of [Plaintiff's] regular cycle of symptoms including dysthymia, major depression and manic-like behavior." (ECF No. 15:8).

Although Dr. Bianco's letter was drafted before the onset date, such evidence can be relevant to the issue of disability. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of [the plaintiff's] case record, and should have been considered by the ALJ."); *see also Stanigar v. Colvin*, No. 13-CV-01613-WYD, 2015 WL

---

[3] Mr. Watts also alleges the ALJ failed to properly consider Dr. Bianco's opinion, which is discussed below.

708609, at *3 (D. Colo. Feb. 17, 2015) (holding "the ALJ erred in failing to consider [p]laintiff's history before the alleged onset date as reflected in the medical records" and noting that an ALJ must discuss all the significantly probative evidence and "[t]his includes medical evidence before the alleged onset date"). Nevertheless, the ALJ did not commit reversible error in his discussion of Dr. Bianco's letter.

Dr. Bianco's diagnosis of Plaintiff's condition was neither uncontroverted evidence the ALJ chose not to rely on nor probative evidence he rejected—the ALJ found bipolar disorder was a severe impairment. (TR. 15). The ALJ did not specifically address Dr. Bianco's notation that Plaintiff's general psychological state was one of dysthymia.[4] But the ALJ did not reject this evidence either, as the ALJ discussed another finding of Plaintiff's depressed mood in the medical evidence, Plaintiff's testimony regarding depression, and Plaintiff's reports to medical providers about depression. (TR. 17-21).

Finally, the ALJ did not address the portion of Dr. Bianco's letter describing Plaintiff's report of a general state of dysthymia with days of depression and manic episodes cycling into depression. (TR. 315). But the ALJ noted Plaintiff's testimony that "the bipolar disorder intensifies his anxiety and depression" and that Plaintiff "has rapid cycling, his thoughts become rapid, and he has a lot of energy." (TR. 17). In this portion of his testimony, Plaintiff noted that he spent 90-95 percent of the time depressed and 5-10 percent of the time manic. (TR 53-54). Plaintiff further testified that unlike people

---

[4] Dysthymia is defined as "a mood disorder characterized by despondency or mild depression." *Foskuhl v. Barnhart*, No. 06-1048-WEB, 2007 WL 1223903, at *3 n.5 (D. Kan. Mar. 20, 2007) (citing *Compact American Medical Dictionary* (1998 at 140)).

8

with regular bipolar who may go a whole month of depression and a whole month of mania, his rapid cycling "flips in a day" and can go a day or a couple of hours with manic symptoms. (TR. 53-54). Plaintiff's testimony, which the ALJ discussed, amounts to a restatement of what he reported to Dr. Bianco. Thus, the ALJ did not ignore Plaintiff's reported symptoms.

### 3. Evidence from During the Period of Disability

Finally, Mr. Watts argues "it defies common sense that a person who was hospitalized for suicidal ideation and underwent [ECT] within a six-month period would have been able to maintain any job." (ECF No. 15:7). In support, Plaintiff cites various medical evidence from the relevant time period—but he also acknowledges the ALJ discussed the evidence.[5] (ECF No. 15:7). "[T]o the extent [Mr. Watts] contends the ALJ erred in weighing the evidence, including that from his providers, [the Court has] no authority to reweigh it." *Terwilliger v. Comm'r, Soc. Sec. Admin.*, No. 19-1028, 2020 WL 290421, at *3 (10th Cir. Jan. 21, 2020) (*citing Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013)). Instead, the Court is tasked with "ensur[ing] the ALJ properly evaluated it." *Id.* Here, Plaintiff's argument amounts to an invitation to reweigh the evidence.

### B.  Dr. Bianco's Opinion

An ALJ must follow a particular analysis in evaluating a treating source's opinion. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling

---

[5] Plaintiff also notes that "the ALJ failed to include limits which would take into consideration the erratic behavior described [by] Dr. Bianco . . . including absenteeism and inconsistent attention, concentration and pace on any job." (ECF No. 15:10). As noted above, however, the ALJ discussed other instances where Plaintiff self-reported the same behavior.

weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted); *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R. § 404.1527. But the ALJ "is not required to expressly discuss each factor in deciding what weight to give a medical opinion." *See Golden-Schubert v. Comm'r, SSA*, 773 F. App'x 1042, 1050 (10th Cir. 2019).

Ultimately, an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion

10

and the reason for that weight." *Allman*, 813 F.3d at 1332. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

The ALJ interpreted Dr. Bianco's statement that Plaintiff "has not been able to hold down a job for more than a few months during the time of his working age" to be an opinion that Plaintiff could not work.[6] An opinion that a claimant cannot work is an opinion on an issue "reserved to the Commissioner" and "even when offered by a treating source, [is] never ... given special significance." *Duncan v. Colvin*, 608 F. App'x 566, 573 (10th Cir. 2015); *see also Cowan v. Astrue*, 552 F.3d 1182, 1188-89 (10th Cir. 2008) (holding that a "statement on the medical form was not a true medical opinion" where the doctor stated "I feel he may never return to work").

The ALJ correctly noted that Dr. Bianco's opinion was one reserved to the Commissioner. He also cited portions of medical evidence which he found was not consistent with the inability to work. (TR. 21-22). The ALJ's summary of such records includes normal examination findings regarding his thought process, thought content, judgment, memory, attention, and concentration. (TR. 20-21). The cited evidence also includes Plaintiff's statements that he had "been all right" and that a medication change resulted in "fewer breakdowns." (TR. 21). These records also note Plaintiff's activities, such as meeting his wife, getting engaged and then married, going out with friends, going to concerts, tailgating with family, and putting in a pool. (TR. 21). Thus, the ALJ rejected

---

[6] It is questionable whether Dr. Bianco's statement amounts an opinion at all, as it appears to be a statement regarding Plaintiff's past work history.

11

Dr. Bianco's opinion based on appropriate factors, as he found it was not supported by evidence and was inconsistent with the record as a whole.

To the extent Plaintiff argues the ALJ erred by not weighing Dr. Bianco's diagnosis of "Bipolar II, rapid cycling primarily depressive mood, which is severe," his observation that Plaintiff was generally of moderately flat affect, or that his general psychological state was one of dysthymia, the argument is without merit because "an ALJ is not required to assign any specific weight to an assessment which [does] not assign any functional limitations' to a claimant. *Giroux v. Berryhill*, No. CIV-17-139-STE, 2017 WL 5473730, at *2 (W.D. Okla. Nov. 14, 2017) (quoting *Paulson v. Colvin*, 665 F. App'x. 660, 666 (10th Cir. 2016); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) ("None of these observations, however, offers an assessment of the effect of Ms. Keyes–Zachary's mental limitations on her ability to work. The file includes much more directly relevant evidence on these issues from acceptable medical sources. The ALJ's failure to assign a specific weight to Mr. Blasdel's observations therefore did not represent harmful error.").

To the extent Plaintiff argues the ALJ did not weigh the portion of Dr. Bianco's letter addressing Plaintiff describing "two or three days of major depression per week interspersed among the general state of dysthymia, and as stated, eight or nine daylong episodes of manic-like behavior that rapidly cycle[s] into depression," that portion of the letter is not an opinion, but instead a recitation of Plaintiff's comments from an interview. The ALJ did not err in his consideration of Dr. Bianco's opinion.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on May 7, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE